IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BELINDA SANTAMORE**                                                                    **PLAINTIFF**

**V.**                                                         **CIVIL ACTION NO. 1:20CV169 HSO-LGI**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY**                                            **DEFENDANT**

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Belinda Santamore appeals the final decision denying her application for a period of disability and Disability Insurance Benefits (DIB). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge ("ALJ"). Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

Plaintiff filed a disability application alleging an onset date of January 9, 2014, due to fibromyalgia, back, neck, ankle, foot, and leg pain; leg numbness, chronic fatigue; bilateral heel spurs; degenerative disc disease; and carpel tunnel syndrome. Plaintiff was 54 years old on the date last insured, with a high school education and past relevant work experience as a fast-food manager and preschool attendant. Following agency denials of her application, an ALJ issued a decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council remanded and directed the ALJ to obtain additional evidence and to give further consideration to Plaintiff's residual functional capacity. Upon reviewing additional evidence on remand,

the ALJ issued a second unfavorable decision. The Appeals Council denied Plaintiff's request for review, and she now appeals that decision.

The evidence is detailed in the memorandum briefs and the ALJ's decision, and thus, will not be repeated in depth here. At the administrative hearing, Plaintiff testified that, *inter alia*, fatigue, exhaustion, and pain, primarily in her neck and back, have prevented her from working. She has undergone a variety of treatments to manage her pain, including a spinal cord stimulator, injections, nerve blocks, radiofrequency ablation, and medication. But these treatments provide only temporary relief, with the injections lasting up to a week; the nerve blocks lasting up to two or three months; and, the radiofrequency ablations lasting up to a year. At the administrative hearing, Plaintiff, who has a VA disability rating of 30, rated her pain between four to six on some days, and four to seven on other days after taking her medication. Though she is able to drive to her doctor's appointments and cook simple meals, she doesn't do any household chores or hobbies. She also avoids carrying any weight, doesn't stand or sit for longer than 20 minutes, and walks only short distances. Plaintiff also testified that she could reach "straight out," but rarely reaches overhead because of her pain level.

After considering Plaintiff's testimony and subjective complaints, the ALJ concluded that the objective medical evidence did not establish Plaintiff was precluded from all work activity. At step one of the five-step sequential evaluation,[1] the ALJ found

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the

that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that although Plaintiff's degenerative disc disease and spondylosis, sacroiliac joint dysfunction, chronic myofascial pain syndrome, rheumatoid arthritis, bilateral hip degenerative joint disease, bilateral carpal tunnel syndrome in the wrists with osteopenia, pain disorder, obstructive sleep apnea, obesity, depression, adjustment disorder, and mixed personality disorder were severe, they did not meet or medically equal any listing. At steps four and five, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), from her onset date through her date last insured, as follows:

> She can lift and carry 20 pounds frequently and 10 pounds occasionally. She can sit, stand, and walk six hours in an eight-hour workday with the option to stand every 60 minutes for up to five minutes without increased time off task. She requires use of an assistive device (cane) for ambulation. She can never climb ladders, ropes, or scaffolds. The claimant can occasionally reach overhead bilaterally. The claimant can frequently reach in other directions with the bilateral upper extremities. She can frequently handle and finger with the bilateral upper extremities. She must avoid concentrated exposure (no more than frequent) to extreme heat and cold, vibrations, and hazards, including dangerous moving machinery and heights. The claimant can perform simple routine repetitive tasks or unskilled work. She can have occasional interaction with supervisors, coworkers, and group supervisors. She is capable of low stress work meaning no fast-paced production requirements and simple work-related decisions with few or no changes in the work setting.

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could have

---

national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

performed work as an office helper and clothing price marker from her onset date of January 2014, through her date last insured, of December 2018.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). As the United States Supreme Court recently reiterated:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 203 L. Ed. 2d 504, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). On judicial review, this Court may not re-weigh the evidence, try the case *de novo,* or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling*, 36 F.3d at 434.

## Discussion

In the instant case, Plaintiff alleges that she is entitled to reversal or remand because the ALJ failed to properly weigh her treating physician's opinion and failed to

resolve the conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") in violation of Social Security Policy Interpretation Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2. The Commissioner counters that the ALJ's decision is supported by substantial evidence and complies with applicable standards. The undersigned finds no basis for reversal or remand.

1.

As her first assignment of error, Plaintiff argues the ALJ failed to properly evaluate her treating physician's opinion pursuant to 20 C.F.R. § 404.1527(c). Effective March 27, 2017, social security regulations were revised so that no specific evidentiary weight, including controlling weight, is to be given to medical opinions from treating sources. 20 C.F.R. § 404.1520(c) (2019). Under the new regulations, supportability and consistency of medical opinions are the most important factors, and ALJs may, but are no longer required to, explain how they considered other factors. *Id.* Under the old regulations, which are applicable here, the statutory analysis required the ALJ to consider the length of treatment; the frequency of examination; the nature and extent of the treatment relationship; the extent to which his opinions were supported by the medical record; the consistency of his opinion with the record as a whole; and the specialization of the physician. 20 C.F.R. § 404.1527 (c). *Newton v. Apfel*, 209 F.3d 448, 453–56 (5th Cir. 2000). Only in the absence of "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist," could an ALJ "reject the opinion of the treating physician without performing a detailed analysis of the

treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527 [(c)]." *Newton*, 209 F.3d at 453.

In the present case, the record reflects that Plaintiff was treated at the Comprehensive Pain and Rehabilitation Clinic, where, as the ALJ noted, "Hunt Hapworth, M.D. was one of the claimant's doctors." By way of background, records from the Comprehensive Pain and Rehabilitation Clinic, as Plaintiff notes, reflect more than 70 visits since the alleged onset date. Of the roughly 30 instances in which Plaintiff received treatment injections within the relevant four-year time frame, Dr. Hapworth was the primary physician to administer her treatment procedures, followed by the osteopaths on staff. All remaining visits were with the clinic's nurse practitioners and physician assistants.

In January 2017, Dr. Hayworth completed a four-part medical questionnaire indicating that Plaintiff's impairments would cause her to have "good and bad days" and to miss more than four workdays per month. Although he noted that Plaintiff does not experience any medication side effects, he opined that her pain or other symptoms would be severe enough to frequently and seriously interfere with the attention and concentration needed to perform even simple work tasks. In evaluating the opinion evidence, the ALJ assessed Dr. Hapworth's opinion as follows:

> The undersigned gives little weight to this opinion, as it does not take into account the treatment records and the claimant's statements indicating that her pain was controlled with her implantation and injections. The claimant testified that her pain was typically rated a four to six out of ten in severity, which is less than the frequent severe pain described by Dr. Hapworth.

Plaintiff asserts that the inconsistencies in Dr. Hapworth's opinion, however, were "reflective of the short-term relief" the injections provided, and that given the frequency of his injections, it is "implausible to maintain that Dr. Hapworth was unaware of the effectiveness of [her] pain management." The ALJ's root error, Plaintiff argues, was in failing to conduct a *Newton*/20 C.F.R. § 404.1527(c) analysis before discounting Dr. Hapworth's opinion. However, controlling Fifth Circuit precedent requires the ALJ to do so only "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist." *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 240 (5th Cir. 2015) (quoting *Newton*, 209 F.3d at 453). Such evidence existed here.

In addition to the pain ratings from the Comprehensive Pain and Rehabilitation Clinic, the ALJ aptly noted that the record, as a whole, "shows that medical treatments and interventions, as well as physical therapy and pain killers, were effective in helping the claimant manage and control her back, neck, hip and arm pain. . . ." In 2016, for instance, Plaintiff reported that her pain was not functionally limiting after receiving injections. She also reported that her medical regimen was functionally beneficial. As the Commissioner notes, similar reports are documented by other treating and examining physicians, including those within Dr. Hapworth's practice. *See Holifield v. Astrue*, 402 F. App'x 24 (5th Cir. 2010) (Since the record is replete with reliable medical evidence controverting Dr. Purser's opinions, the ALJ had no obligation to perform a detailed analysis before rejecting his opinions.)

Plaintiff concedes that Dr. Hapworth's records "routinely indicate that pain was relieved in some way post-procedure," but she points out that she had to inevitably return for injections once her pain returned.  The ALJ repeatedly notes the ongoing nature of Plaintiff's injections, however, as well as the ongoing effectiveness they had in abating her symptoms, with her physical examinations continually revealing only mildly limited range of motion and tenderness.  It is well-established that the frequency of treatment is a relevant factor to discount or support complaints of disabling pain or other limitations, but it is equally settled that a medical condition that can be reasonably remedied by surgery, treatment or medication is not disabling. *See Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991), *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). For an impairment to rise to the level of disabling, it must be "constant, unremitting, and wholly unresponsive to therapeutic treatment."  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

The undersigned also does not read the ALJ's decision to suggest that Dr. Hapworth was unaware of the efficacy of treatment as Plaintiff argues.  He simply observed that Dr. Hapworth's questionnaire responses[2]  did not demonstrate that he

---

[2]  Moreover, the Fifth Circuit has found no error when the ALJ fails to consider the *Newton* factors before declining to give controlling weight to a physician's questionnaire responses when the responses were inconsistent with his own medical records and that finding is supported by substantial evidence. *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017). *Foster V. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony.... [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.' "); *Lee v. Comm'r of Soc. Sec. Admin.*, No. 1:19CV678-LG-LGI, 2021 WL 1030159, at *4 (S.D. Miss. Mar. 17, 2021) (adopting report and recommendation) ("The ALJ was not

had taken the "treatment records and the claimant's statements indicating that her pain was controlled with her implantation and injections" into account. Plaintiff acknowledges in rebuttal, in fact, that the basis articulated by the ALJ for discounting Dr. Hapworth's opinion is its lack of consistency and supportability with the record as a whole. Her assertion that the inconsistencies were merely emblematic of the "short-term" pain relief the treatments provided is unavailing. Records show that Plaintiff typically rated her pre-injection pain between four and six in severity, with post-injection ratings improving to 0-1 out of ten.

In sum, it was not unreasonable for the ALJ to weigh Dr. Hapworth's questionnaire responses against competing evidence from his clinic records and the evidence as a whole. *Salmond*, 892 F.3d 812. In declining to give them controlling weight, the ALJ performed his role of weighing conflicting evidence and his decision on this issue is supported by substantial evidence.

## 2.

As her second and third points of error, Plaintiff contends that the ALJ violated Social Security Policy Interpretation Ruling ("SSR") 00-4p by failing to resolve what she perceives is a conflict between the Dictionary of Occupational Titles ("DOT) and the vocational expert's testimony. Appendix C - Components of the Definition Trailer, 1991 WL 688702; SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). At the fifth step of the

---

required to assign controlling weight to Dr. Bell's opinions because his opinions were set forth in a questionnaire format.").

sequential evaluation, the Commissioner may take administrative notice of reliable job information available from the DOT. However, the ALJ is not bound by DOT classifications. In *Carey v. Apfel*, the Fifth Circuit "recognized that the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." 230 F.3d 131, 145 (5th Cir. 2000) (internal citations omitted). Unlike the DOT, which gives only general descriptions of job duties, a "vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion as to whether the claimant can perform the specific job." *Fields v. Bowen*, 805 F.2d 1168, 1170–71 (5th Cir. 1986), *holding modified by Carey v. Apfel*, 230 F.3d 131. In *Carey*, the Fifth Circuit explained that:

> . . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. . . . Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Carey*, 230 F.3d at 146–47. Thus, even if the vocational expert's testimony differs from the DOT, the testimony may constitute substantial evidence upon which the ALJ can rely to satisfy the Commissioner's burden at the fifth step of the sequential evaluation. *Id.* Plaintiff asserts the burden was not met here because the ALJ's determination that she could have performed work as an office helper and clothing price marker is based on an

unresolved conflict between the vocational expert's testimony and the DOT in violation of SSR 00-4p.

SSR 00-4p places an affirmative duty on ALJs to inquire and obtain explanations for "apparent conflicts" between the vocational expert testimony and the DOT at the administrative hearing, and to explain how any identified conflicts were resolved in their written decision. SSR 00-4p, 2000 WL 1898704, *4. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (holding under SSR 00-4p that an ALJ must inquire into "any possible conflict" between the VE conclusions and DOT). The transcript in the instant case reflects the following relevant exchanges between the ALJ and the vocational expert at the administrative hearing:

> Q: Do you understand that if you give us an opinion that conflicts with the Dictionary of Occupational Titles you will advise us of the conflict and the basis of your opinion?
>
> A: Yes, sir, I do.
>
> Q: And have you reviewed the vocational aspects of the file and heard the testimony here today?
>
> A: Yes, sir.
> . . . .
> Q: [ As for] [f]actors that may not be specifically addressed in the DOT, such as a sit/stand option, overhead reaching, use of a cane for ambulation, and absenteeism, how would you base your opinion in those respects?
>
> A: . . . . Foundation for that experience—for that testimony—is based on my work as a rehabilitation consultant in private practice doing job placement, labor market surveys, extensive jobs analysis in business and industry and perform[ance] of a range of other rehabilitation return to work services.
>
> Q: Otherwise, is your testimony consistent?

> . . . .
>
> A:   Yes, sir. Otherwise, yeah, to the best of my knowledge it is consistent.

Plaintiff does not dispute that the ALJ asked the vocational expert to identify inconsistencies between his testimony and the DOT in compliance with SSR 00-4p, as the above exchange makes clear. Rather, Plaintiff argues that the ALJ's error was in relying on the vocational expert's testimony because the DOT's companion volume, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"), indicates that "frequent" reaching is required for the identified occupations, and reaching is defined in the SCO and SSR 85-15 as "[e]xtending hands and arms in *any* direction." Because "any" direction could include overhead reaching, Plaintiff submits the vocational expert's testimony presented a "direct and apparent" conflict with the DOT that the ALJ failed to resolve before relying on the vocational expert's testimony in contravention of SS 00-4p. In this Circuit, the failure to resolve a direct and obvious conflict between the DOT and the vocational expert testimony lessons the weight afforded to the vocational expert testimony such that reversal and remand for lack of substantial evidence usually follows. *Carey*, 230 F.3d at 146-47. But when a conflict is implied or indirect, the ALJ can accept and rely upon the VE's testimony provided the record reflects an adequate basis for doing so, particularly where, as here, the claimant forfeits the argument by failing to raise it at the administrative hearing. *Bailey v. Saul*, 853 F. App'x. 934, 938 (5th Cir. 2021) (citing *Carey*, 230 F.3d at 146-47).

However, the Fifth Circuit has not directly addressed this issue and courts are divided on whether the conflict as alleged presents an actual conflict, and if so, how to characterize it. A number of district courts in the Fifth Circuit emphasize that the ALJ's contention in this case that overhead reaching is not "specifically addressed in the DOT" is consistent with a plain reading of the narrative descriptions for the cited jobs in the DOT, as neither job specifically states that overhead reaching is required.[3] These courts have observed that Fifth Circuit precedent provides that a direct conflict arises when the VE's testimony regarding the exertion or skill level of a particular job is facially different than that indicated in the DOT, or when the VE's testimony creates an obvious conflict

---

[3] 239.567-010 Office Helper, DICOT 239.567-010 is defined as follows:

> Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVERER, OUTSIDE (clerical) 230.663-010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

209.587-034 Marker, DICOT 209.587-034 is defined as follows:

> Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine [TICKETER (any industry); TICKET PRINTER AND TAGGER (garment)].

between the ALJ's RFC determination and the description of the jobs in the DOT. *See Bailey v. Saul*, 853 F. App'x. 934, 937 (5th Cir. 2021) (observing that *Carey* "distinguished between 'actual,' "direct," "obvious," and "facial" conflicts on the one hand, and "alleged," "indirect," and "implied" conflicts on the other hand). [4] But where, as here, the DOT narrative descriptions are silent as to what type of reaching is required, the conflict is indirect or implicit, and the vocational expert's unchallenged testimony warrants no reversal or remand. *See, e.g., Canton v. Astrue*, No. 08-CV-3038 NGG JO, 2010 WL 5391184, at *7 (E.D.N.Y. Dec. 22, 2010) ("Where both hands are required to perform a job, the DOT has not been shy in saying so."); *See Joseph B v. Saul*, No. 4:19-CV-1285, 2020 WL 7024310, at *9 (S.D. Tex. Nov. 30, 2020) (holding no conflict because DOT "does not describe any job duties that would *require* overhead reaching." (emphasis in original) (citing *Carey*, 230 F.3d at 146–47); *accord Ruffin v. Colvin*, No. 3:16CV18-DPJ-LRA, 2017 WL 536549 (S.D. Miss. Feb. 8, 2017) *adopting report and recommendation*, 2016 WL 11268859 (S.D. Miss. Dec. 29, 2016) (collecting cases showing that *Carey* remains good law even though decided before SSR 00-4P, and

---

[4] "The 'conflict' nomenclature used in these cases isn't always helpful." *Ambriz v. Kijakazi*, No. 5-20-CV-00727-RBF, 2022 WL 855987, at *4 (W.D. Tex. Mar. 23, 2022). *See Martin v. Saul*, No. 5-19-CV-00573-FB-RBF, 2020 WL 4382133, at *4 (W.D. Tex. July 30, 2020) ("How one draws a meaningful distinction between or differentiates in any kind of principled way between direct, tangential, apparent, indirect, implied, and obvious conflicts is not entirely clear. The better approach is to dispense with unthinking reliance on formalistic labels and instead to focus in more difficult cases on whether the record reflects substantial evidence to support the ALJ's conclusions notwithstanding any conflict(s) in the record. *See Carey*, 230 F.3d at 146. Indeed, when a tangential or "implied or indirect conflict" is presented, the Fifth Circuit's rule is "that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Id.*

finding implied or unexplained conflict does not require remand because plaintiff failed to raise it before the ALJ). *See also Tracy D. v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1012-BT, 2019 WL 4748124, at *3 (N.D. Tex. Sept. 27, 2019); *Calvert v. Comm'r, Soc. Sec. Admin.*, No. 2:18-CV-066-RSP, 2019 WL 1317313, at *3 (E.D. Tex. Mar. 22, 2019) (affirming decision of ALJ that relied on vocational expert testimony that job could be performed with only occasional overhead reaching, where DOT description requires frequent reaching but does not say overhead reaching); *Sherron F. v. Berryhill*, No. 3:17-CV-01058-BT, 2018 WL 4680565, at *4 (N.D. Tex. Sept. 28, 2018) (holding there is no conflict between vocational expert's opinion that a person limited to occasional overhead reaching can work a as correspondence clerk and billing clerk and the DOT where the DOT's descriptions for those jobs are silent as to what type of reaching is required); *Rodriguez v. Colvin*, No. 3:14-CV-00032-RFC, 2015 WL 778852, at *4 (W.D. Tex. Feb. 23, 2015) (no direct or obvious conflict between vocational expert and DOT where nothing in DOT job description indicated overhead reaching required for job).

The undersigned submits that the colloquy between the ALJ and the vocational expert at the administrative hearing shows that the vocational expert's testimony did not conflict with the DOT but, rather, clarified how its broad categorizations applied to this specific case. However, even if the Court were to find a conflict existed, the undersigned submits that the ALJ elicited a "reasonable explanation" for the alleged conflict and explained how he resolved it in his written decision in compliance with SSR 00 4-p.

A reasonable explanation under SSR 004p includes "information not listed in the DOT," such as "[i]nformation about a particular job's requirements or . . . information . .

from a VE's . . . *experience in job placement or career counseling.*" SSR 00-4p, 2000 WL 1898704, at *2. (emphasis added).  The vocational expert, who was aware of Plaintiff's overhead reaching limitations, testified that based on his experience as a "work rehabilitation consultant in private practice doing job placement, labor market surveys, extensive jobs analysis in business and industry and [the] perform[ance of] a range of other rehabilitation return to work services," she could still perform the jobs identified and that his testimony was "otherwise consistent" with the DOT.  *See Robert Lee M.*, 2019 WL 3079384, at *16 (vocational expert "specifically testified that her testimony was consistent with the DOT, supplemented by information she "gleamed [sic] from [her] experience in the placement and evaluation of individual's subsequent to that publication") (citing *Segovia*, 226 F. App'x at 805).  In this written decision, the ALJ explained that this was his basis for relying on the vocational expert's testimony that Plaintiff could perform the jobs identified, even if limited to occasional overhead reaching.  Plaintiff does not explain what more resolution was required.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED on December 30, 2022.

s/ LaKeysha Greer Isaac  
UNITED STATES MAGISTRATE JUDGE